✎ AO 472 (Rev. 12/03) Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT

_____Eastern_____ District of _____Michigan_____

UNITED STATES OF AMERICA

**V.**

_____AKIL JUMA YOUNG_____
_Defendant_

## ORDER OF DETENTION PENDING TRIAL

Case Number:  09-20105

In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), a detention hearing has been held.  I conclude that the following facts require the detention of the defendant pending trial in this case.

### Part I—Findings of Fact

- ☐ (1)  The defendant is charged with an offense described in 18 U.S.C. § 3142(f)(1) and has been convicted of a   ☐ federal offense   ☐ state or local offense that would have been a federal offense if a circumstance giving rise to federal jurisdiction had existed -  that is
  - ☐ a crime of violence as defined in 18 U.S.C. § 3156(a)(4).
  - ☐ an offense for which the maximum sentence is life imprisonment or death.
  - ☐ an offense for which a maximum term of imprisonment of ten years or more is prescribed in _____.*
  - ☐ a felony that was committed after the defendant had been convicted of two or more prior federal offenses described in 18 U.S.C. § 3142(f)(1)(A)-(C), or comparable state or local offenses.
- ☐ (2)  The offense described in finding (1) was committed while the defendant was on release pending trial for a federal, state or local offense.
- ☐ (3)  A period of not more than five years has elapsed since the   ☐ date of conviction   ☐ release of the defendant from imprisonment for the offense described in finding (1).
- ☐ (4)  Findings Nos. (1), (2) and (3) establish a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of (an) other person(s) and the community.  I further find that the defendant has not rebutted this presumption.

### Alternative Findings (A)

- ☑ (1)  There is probable cause to believe that the defendant has committed an offense
  - ☑ for which a maximum term of imprisonment of ten years or more is prescribed in   Title 21_____.
  - ☑ under 18 U.S.C. § 924(c).
- ☑ (2)  The defendant has not rebutted the presumption established by finding (1) that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community.

### Alternative Findings (B)

- ☐ (1)  There is a serious risk that the defendant will not appear.
- ☐ (2)  There is a serious risk that the defendant will endanger the safety of another person or the community.

### Part II—Written Statement of Reasons for Detention

I find that the credible testimony and information submitted at the hearing establishes by   ☑ clear and convincing evidence   ☐ a preponderance of the evidence  that

there are no conditions or combination of conditions that will reasonably assure the appearance of the defendant as required and the safety of the community, considering the factors listed in Title 18, United States Code, section 3142(g).  The following pages contain a more detailed explanation of the reasons for this determination.

### Part III—Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States marshal for the purpose of an appearance in connection with a court proceeding.

_____3/20/2009_____        s/Michael Hluchaniuk
Date                _Signature of Judge_

Michael Hluchaniuk            U.S. Magistrate Judge
_Name and Title of Judge_

*Insert as applicable:  (a) Controlled Substances Act (21 U.S.C. § 801 _et seq._); (b) Controlled Substances Import and Export Act (21 U.S.C. § 951 _et seq._); or (c) Section 1 of Act of Sept. 15, 1980 (21 U.S.C. § 955a).

Akil Juma Young
Case No. 09-20105

## STATEMENT OF REASONS FOR DETENTION

Defendant Akil Juma Young was arrested on February 25, 2009. The

following day a complaint was filed alleging that defendant and Johnny Earl-Milo

Taylor, II, conspired to distribute and possess with intent to distribute 100

kilograms or more of marijuana. Defendant had his initial appearance in Court on

the complaint on February 27, 2009. At that time, the government moved for

detention and a detention hearing was scheduled for March 6, 2009, based on the

request of defendant's attorney.

Defendant was indicted on March 4, 2009, and charged with one count of

possession with intent to distribute 100 kilograms or more of marijuana and one

count of possession of a firearm in furtherance of a drug trafficking crime. The

drug offense carries a statutory mandatory minimum sentence of five years and a

40 year maximum sentence. The firearm offense carries a statutory mandatory

minimum of five years, consecutive to any other sentence, and a life maximum

sentence.

The facts proffered by the government during the detention hearing relating

to the events of February 25, 2009, indicate that two vehicles, a Yukon and a Ford

pick-up, were seen near an apartment identified as 1303 Sixth Street in Flint.

Those vehicles were later seen at a residence on Birch Lane in Davisburg,

subsequently determined to be defendant's residence. The two vehicles left the

Birch Lane residence and a Jeep arrived, pulling a trailer. The trailer was backed

up to the garage and it appeared to surveillance officers that items were being

unloaded from the trailer into the garage. The Yukon and the pick-up separately

returned to the residence and then left again. The pick-up driver, later identified

as defendant, spoke with the driver of the Jeep as it drove away from the

residence. The Yukon and the pick-up again left the Birch Lane residence with

the Yukon returning to the 1303 Sixth Street location. Officers approached the

Sixth Street residence and encountered two individuals who fled as the officers

approached. One of those individuals was caught and arrested and is a co-

defendant in the present indictment. The Yukon was searched and approximately

100 pounds of marijuana was found inside. It was found inside a duffle bag

similar to four empty duffle bags inside the residence and also similar to the duffle

bags containing marijuana found at Birch Lane. Also found inside the Sixth Street

residence were drug trafficking paraphernalia and two firearms. A search at Birch

Lane resulted in the seizure of approximately 1000 pounds of marijuana in the

garage along with a scale and money counter inside the residence and four

handguns, two of which were loaded.  Documents with defendant's real name and his alias were found inside the residence.

At the detention hearing, the government also proffered that defendant should be detained based on several factors including:  (1) the presumption in favor of detention based on the charges defendant was facing; (2) the fact that defendant was facing both drug and firearm charges; (3) the fact that, in February of 2009, defendant's residence was found to contain over 1000 pounds of marijuana (a quantity of controlled substances that was valued by the government to be worth over $1,000,000 based on a street value of $1,000 per pound), four handguns including one with an obliterated serial number, a set of scales, and a money counter; (4) the fact that, in August of 2005, a package containing over 50 pounds of marijuana was sent to a post office box in the Flint area that was linked to defendant; (5) the fact that, in January of 2007, defendant was confronted on a train in New Mexico by DEA agents and in the same sleeper car in which defendant was riding, approximately $230,000 in cash was found and defendant had approximately $11,000 in cash on his person; (6) in January of 2008, defendant was in a motor home that was stopped in New Mexico and found to contain approximately $48,000 in cash, a second person in the motor home was David Hall, who had also been present on the train when the cash was found in

defendant's presence in January of 2008; (7) that defendant had used an alias of

Chris Sanders at various times; and (8) that defendant had been linked to several

residences in the Flint area.

Defendant proffered that he had lived in the Flint area most of his life, his

former wife and child lived in the Flint area, he had been a Flint police officer for

several years, he owned a business in Flint for a period of time, he was currently

employed as the owner of a minor league basketball team in Atlanta, Georgia, he

was not at his residence on Birch Lane when the large amount of marijuana was

delivered there, and the 50 plus pounds of marijuana sent to the post office box

were not connected to him.  Defense counsel acknowledged that defendant had

used an alias in the past, but contended its use was innocuous and not illegal in

nature.  Defense counsel asked for a continuance of the hearing to attempt to

obtain the testimony of some witnesses and to obtain documentation regarding the

defendant's current income.

Defendant filed a memorandum in support of his request for pretrial release

on March 10, 2009 (Dkt. 12), and a supplemental memorandum in support of his

request for pretrial release, also on March 10, 2009.  (Dkt. 13).  These pleadings

portrayed defendant as a caring individual who was close to his family, engaged in

positive activities in the community and who had the support and trust of

numerous people in the community, many of whom wrote letters of support that were attached to the memoranda.

The detention hearing was resumed on March 13, 2009. Defendant called his former spouse, Tabatha Young, to the witness stand. Ms. Young testified that she shared custody of defendant's daughter with defendant and that defendant was involved in the life of their eight-year old child. Ms. Young thought that defendant was dependable and that he would show up for future court proceedings. However, Ms. Young did not know much about defendant's residences or his employment since their divorce in 2005.

Defendant testified on his own behalf and stated that he felt intimidated by the pretrial services officer who had interviewed him and, as a result, was evasive about his residence during the interview. Defendant further testified that his family moved to Flint from New York in 1990 and that he attended high school in Flint, earning good grades. He also indicated he went to college, but did not graduate and then returned to Flint in 1995. He became a Flint police officer in 1996 and worked in that capacity until 2001, when he was charged with an assault offense, which was later dismissed. He later worked at an electronic data system company and a grocery store where he held manager positions in both locations. He then opened an adult foster care business in late 2005 or early 2006 and

operated that until March of 2007.  Defendant said that he did not have a regular residence at one point in time and opened a post office box for the purpose of receiving mail.

He considered leaving Flint based on the difficulty he had arising from the criminal charges that were later dropped and the ensuing negative publicity he received.  He attempted to set up a business in Atlanta and while there, he became involved in the World Basketball Association, eventually buying his own team in that league in August of 2008.

He admitted that he began using the alias Chris Sanders in 2007 because he suffered financial hardship after losing his job as a police officer in 2001 and he wanted a "fresh start."  He claimed that he only used the name "sporadically" and did not carry the false identification with him that the government apparently found during the search of his residence.

Defendant denied knowing anything about the post office box where the marijuana was sent to in 2005 and claimed that his brother must have signed some of the documents with the Chris Sanders name on them, which were found in his residence on Birch Lane.  He claimed that he had no reason to leave the area because that is where his family lived.

Regarding the Chris Sanders alias, defendant said he used it to "establish

credit" and he also had the utility bill for an apartment at 1303 Sixth Street in Flint
set up in the Sanders name. Defendant characterized that apartment as a "resting
spot" where he would stay from time-to-time, but he denied ever living there.

On cross-examination, defendant acknowledged that the post office box
where the marijuana was sent (which he denied knowing anything about on direct
examination), was actually a post office box that he had set up in conjunction with
the operation of the adult foster care business. The marijuana that had been sent to
that post office box was addressed to the corporate name of defendant's adult
foster care business at that address.

Defendant further acknowledged that, in order to obtain the false Chris
Sanders identification, he had paid someone who introduced him to a corrupt
employee of the Michigan Secretary of State office, who knowingly provided him
with false identification documents issued by the State of Michigan. Additionally,
defendant had purchased airline tickets in this false name and had stayed in hotels
under the false name.

Defendant admitted that he had falsified information in a rental application,
using his own name, relating to a place of employment and the amount of income
he claimed to be earning. He also admitted to the use of a second post office box
for the purposes of receiving mail. These "post office boxes" were mail boxes

provided by a commercial service and used what would appear to be a normal street address, when in reality, they were just a box where one picked up mail.

A defendant should be released on bond unless it is determined that there are no conditions or combinations of conditions that will reasonably assure the appearance of the person as required and the safety of any person or the community. 18 U.S.C. § 3142(e)(1). A person charged with certain offenses is subject to a rebuttable presumption in favor of detention. 18 U.S.C. § 3142(e)(3). Those offenses include drug offenses for which the maximum term of imprisonment is ten years or more and an offense under 18 U.S.C. § 924(c). 18 U.S.C. § 3142(e)(3)(A) and (B). Defendant is charged with a drug offense meeting that criteria and an offense under 18 U.S.C. § 924(c) and, therefore, the rebuttable presumption in favor of detention is applicable to the present case.

The factors to be considered in determining whether a defendant should be released on bond or detained are found in § 3142(g) and, while the facts relating to a defendant being a flight risk must be proved by a preponderance of the evidence, the facts associated with a defendant being a danger to the community must be proved by clear and convincing evidence. 18 U.S.C. § 3142(f).

While a defendant may rebut the presumption in favor of detention, the "presumption in favor of detention does not vanish simply because a defendant

comes forward with evidence to rebut it.  Were the presumption to vanish, 'courts wold be giving too little deference to Congress' findings regarding this class.  The court may continue to give the presumption some weight by keeping in mind that Congress has determined 'that drug offenders pose a special risk of flight and dangerousness to society.'"  *United States v. Lattner*, 23 Fed.Appx. 363, 364 (6th Cir. 2001) (internal citation omitted).

"Danger to the community" includes more than just the risk that one or more individuals may face from the defendant's release.  Drug trafficking represents a danger to the community and continued drug trafficking constitutes a danger to the community within the meaning of § 3142(e).  *United States v. Wildfong*, 2009 WL 233766 (E.D. Mich., 2009).  At least seven circuits, not including the Sixth Circuit, have so held.  *Id*.  The Sixth Circuit has not, however, reached a contrary viewpoint.

Several factors in the present case indicate that defendant is involved in ongoing drug trafficking.  First, the quantity of the drugs, over 1000 pounds of marijuana, which is worth over $1,000,000, suggests that someone who commits a crime on this order of magnitude has been previously involved in drug trafficking; in other words, a person does not begin a drug trafficking business by selling a million dollars in marijuana.  A second factor is that the apparent delivery person

for the drugs (the person driving the Jeep and pulling the trailer) went to defendant's residence without defendant being present.  This suggests a course or pattern of past conduct, given that a person would not make a delivery of this quantity of controlled substances without meeting with the person to whom the drugs were delivered, unless there was a familiarity with that person.

The third factor suggesting continued drug trafficking is defendant's past conduct.  While defendant has not been convicted of a drug offense, his past conduct, viewed in light of recent events, suggests related activities going back several years.  In 2005, a package containing over 50 pounds of marijuana was sent to a post office box under defendant's control and it was addressed to defendant's business.  Defendant has denied being involved in that incident, but considering the events from February of this year and the defendant's false denial of having any connection to the post office box to which the package was mailed, the facts support an inference of criminal involvement.  The 2007 incident in which defendant was found on a train in New Mexico on a train sleeper car, that contained over $230,000 in cash, also supports an inference of criminal activity. While defendant claimed that he did not know anything about the presence of the money and claimed it belonged to someone else with whom he was traveling, no explanation was offered as to why anyone would be traveling with that much cash.

Further, defendant personally had $11,000 in cash, which was also
unexplained. While there may be an innocent reason that someone would possess
that much cash, large amounts of cash are commonly associated with drug
trafficking or other criminal activity, where the individuals involved do not want
to leave a "paper trail" associated with their activities. The 2008 incident where
defendant was in a motor home in New Mexico with almost $48,000 in cash, while
traveling with one of the individuals who was on the train with defendant the year
before, also supports an inference of criminality. Defendant denied knowledge of
this money as well, but no innocent explanation was offered as to why someone
with defendant would have this much cash with them. Considered individually,
these facts may not be particularly incriminating, but viewed together and also in
light of the events of February of this year, they paint a fairly persuasive picture of
continued drug trafficking on defendant's behalf.

Another "danger to the community" factor is the presence of four handguns
in defendant's residence, where the million dollar drug cache was found.
Additionally, at the 1303 Sixth Street residence, where another 100 pounds of
marijuana was found, two additional firearms were located. Drugs and guns are an
extremely dangerous combination. Based on the above, it is determined that clear
and convincing evidence exists, establishing that defendant represents a danger to

the community.

With respect to defendant being a flight risk, he faces a statutory mandatory minimum sentence of ten years imprisonment if convicted of the offenses of which he is currently charged. The prospect of that potential sentence would provide a person an incentive to flee the jurisdiction, even if the person had family residing in this area. Additionally, the evidence indicates that defendant is involved in trafficking of extremely large quantities of controlled substances, which suggests access to large sums of money and contact with individuals who operate at higher levels of criminal activity. Thus, defendant would have the means of fleeing and sustaining himself away from this area and outside the reach of law enforcement. Defendant also has displayed an ability and willingness to obtain and use false identification, which would certainly facilitate the avoidance of law enforcement. While defendant claimed to have obtained the false identification for a "fresh start" from his financial problems, his explanation does not make good sense under the circumstances. There would be no need to travel and stay in hotels under a false name for the purpose of a "fresh start," particularly six years after his 2001 arrest, which he claimed was the reason he needed a "fresh start." Defendant has provided false information to obtain bank accounts and to rent property. His willingness to use false information to accomplish some goal clearly

belies any claims of truthfulness that he makes with respect to his promise to appear at future court proceedings and comply with the other normal conditions of bond that might be set. Inherent in a person's release on bond is an element of trust that the person will appear as required and comply with the terms of bond. Such trust cannot be placed in a person who uses falsehoods and deception to accomplish his goals.

Based on the above, and applying the standards contained in § 3142(g), the government's motion for detention is granted. Clear and convincing evidence indicates that defendant is a danger to the community based on his continued involvement in drug trafficking, his involvement in drug trafficking at a relatively high level, and his possession of firearms in conjunction with drug trafficking. A preponderance of the evidence indicates that defendant is a flight risk in light of the potential penalty he is facing and his regular use of a false identity to conduct some of his affairs. While defendant has family and friends who reside in the Flint area, even if it could be argued that such support would rebut the presumption in favor of detention, the presumption remains as a factor weighing in favor of detention. Further, while defendant claims to be employed earning $4,000 per month, he has failed to produce documentation of that claim, even though he was given extra time to do so. Given the fact that defendant has a track record of

making false claims about his income, his claim about his current source of income is not given much weight in the absence of documentation or some other form of corroboration.

## CERTIFICATE OF SERVICE

I certify that on January 8, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following Craig F. Wininger, AUSA and Sheldon Halpern, and I certify that I have either hand delivered/ mailed by United States Postal Service the paper to the following non-ECF participants: Pretrial Services Agency and U.S. Marshal's Service.

s/James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
pete_peltier@mied.uscourts.gov